***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On March 31, 1998, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On said date, an Employer-Employee relationship exists between plaintiff and defendant-Employer and has during all times relevant to this claim.
3. On said date, the employer-defendant employed three or more employees.
4. On said date, the employee sustained an injury by accident or specific traumatic event arising out of and in the course of his employment.
5. At the time and date of the injuries sustained, the employee-plaintiff contends his average weekly wage was at least $495.00, and defendants contend the same was $389.96.
6. Documents stipulated into evidence include the following:
Stipulated Exhibit #1 — Plaintiff's medical records, correspondence, various documents including Industrial Commission forms, vocational rehabilitation records, pharmacy receipts and tax records for plaintiff.
7. The depositions of Leon Dickerson, Jr., M.D., Charles E. Rawlings, M.D., R. Ernest Cohn, M.D., Thomas Furr, Katherine O'Kane, Michael Vaughn, and Gary L. Sigmon, Ed.D. are part of the evidentiary record in this case.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 47 years old and had been working for defendant-employer since October of 1993. Plaintiff worked as a utility worker, which involved loading and unloading boxes using a pallet jack, lifting overhead from the ground, and required frequent bending and stooping. Prior to becoming employed with defendant-employer, plaintiff has a work history of being a loader/unloader, working in packaging and assembly, and being a cap maker for an electronics company. The plaintiff has a high school education with no further training.
2. On March 31, 1998, plaintiff sustained a compensable injury to his back while moving a couch. At the time of the injury, plaintiff heard a pop and felt what he described as an "electric shock" go down both his legs; plaintiff fell backwards, jerked his neck, and remained on the ground until a co-worker got some help.
3. The plaintiff was initially seen by Dr. Bond, who treated him conservatively for a neck and back sprain. Due to continued back pain, plaintiff treated with Dr. Jim Serene who ordered an MRI. The results of the MRI were positive for a herniated lumbar disc L4-5 right. Dr. Bond referred plaintiff to Dr. Charles Rawlings.
4. On May 28, 1998, Dr. Rawlings performed a microscopic diskectomy partial hemilaminectomy at L4-5 on the right and removal of a free fragment disk. Plaintiff improved somewhat following this surgery.
5. Dr. Rawlings also related plaintiff's neck and left arm pain to his fall at work. Plaintiff continued to have increased symptoms of the left arm, therefore, an MRI was performed which showed multi-level degenerative disc disease with a C6-7 herniated disc. A second opinion was obtained from Dr. Curling regarding a surgical recommendation, and he concurred that surgery was in order. On December 8, 1998, plaintiff underwent an anterior cervical diskectomy and fusion at C6-7. Plaintiff did receive some relief from the surgery.
6. By February of 1999, Dr. Rawlings released plaintiff from a surgical standpoint and assigned him a combined twenty-five percent (25%) permanent partial impairment rating to the spine secondary to his compensable injury [ten percent (10%) to the back and fifteen percent (15%) to the neck.] Plaintiff was released to return to light duty in March 1999.
7. Plaintiff continued to experience neck, back, and left arm pain, such that he sought treatment from Dr. David Dupuy in June of 1999. Dr. Dupuy ordered a cervical scan that confirmed a herniated cervical disc at C-6 on the left. Dr. Dupuy referred plaintiff to Dr. Leon Dickerson.
8. On September 8, 1999, Dr. Dickerson performed a microscopic diskectomy at the C5-C6 anterior cervical fusion. As of January 5, 2000, plaintiff was rated with a ten percent (10%) permanent partial disability to the neck and was released to work with restrictions of no lifting over fifteen pounds on a frequent basis; no prolonged reaching overhead with extreme positions; no lifting over five pounds above shoulder level, fifteen pounds from waist to shoulder, and a maximum lift of thirty pounds.
9. Since being released to return to work with restrictions, defendants have continued to pay plaintiff indemnity benefits. Additionally, defendants provided vocational rehabilitation services, however, no employment has been located within plaintiff's restrictions. However, defendants have failed to provide plaintiff with medical treatment.
10. At least two positions were proposed to plaintiff that had potential for being within his restrictions: one job required travel of almost 80 miles roundtrip, which after clarification from Dr. Dickerson on plaintiff's tolerance for travel, is not a job that would have been suitable for plaintiff. Dr. Dickerson noted that he had not restricted plaintiff from driving, however, when he completed the form from Ms. O'Kane inquiring as to whether plaintiff could drive 40 miles to and from work, Dr. Dickerson interpreted that to mean 40 miles roundtrip. The other job was that of a vacuum cleaner salesperson, on an independent contractor basis, that would have required extensive travel and/or riding to visit several homes for demonstrations of the product, including carrying and manipulating the product to an extent prohibited by plaintiff's work restrictions. There was also no set salary to be paid. Neither job was suitable for plaintiff based on his work restrictions, therefore, plaintiff did not unjustifiably refuse suitable employment. No suitable employment has been located for plaintiff to date.
11. Dr. Rawlings, a neurosurgeon, opined that plaintiff is not permanently and totally disabled and that as of the time Dr. Rawlings released plaintiff in February 1999, he was capable of returning to work and that plaintiff would be able to resume normal activity within two months. Dr. Rawlings performed surgery on plaintiff and treated plaintiff for several months.
12. Dr. Leon Dickerson, an orthopedist, who also performed surgery and treated plaintiff for several months, opined that plaintiff is able to return to work and is not permanently and totally disabled.
13. Two days before the scheduled hearing before the deputy commissioner in this matter, plaintiff independently sought an opinion from Dr. Gary Sigmon, a vocational consultant. Dr. Sigmon has an undergraduate and masters degree in rehabilitation psychology and a doctorate in education. Dr. Sigmon is not a medical doctor, nor has he ever treated plaintiff. As a result of his evaluation of plaintiff, Dr. Sigmon offered his opinion that plaintiff is not capable of performing any job in the national economy as typically described.
14. Plaintiff also sought an opinion from Dr. R. Ernest Cohn, with respect to his impairment ratings. Dr. Cohn evaluated plaintiff on April 2, 1999 and on October 31, 2001. Dr. Cohn is trained in chiropractic medicine, is a medical doctor by way of the UNIREMHOS School of Medicine and recently obtained his naturopathic medicine doctor degree. Dr. Cohn practices holistic medicine and is an instructor with the North American Academy of Impairment Rating Physicians. Dr. Cohn offered his opinion that plaintiff is 100% disabled. Dr. Cohn has not offered or rendered treatment to plaintiff.
15. Based on the most competent medical evidence in the evidentiary record, the undersigned gives greater weight to the opinions expressed by Drs. Rawlings and Dickerson with respect to plaintiff's ability to work and as to whether he is permanently and totally disabled.
16. Based on calculations derived from the Form 22 submitted in evidence, plus the retirement statement submitted into evidence, plaintiff's average weekly wage is $396.13, yielding a compensation rate of $264.10.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer on March 31, 1998, resulting in injuries to his neck and back. As a result of said injury by accident, plaintiff is entitled to continue to receive temporary total disability compensation at the rate of $264.10 per week until plaintiff returns to work or until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
2. Plaintiff is not permanently and totally disabled as a result of his compensable injury by accident. N.C. Gen. Stat. § 97-29.
3. As a result of his compensable injury by accident, plaintiff is entitled to continue receiving appropriate medical treatment for his injuries, as defined by N.C. Gen. Stat. §§ 97-2(19) and 97-25. Further, defendants shall reimburse plaintiff for medical expenses for out of pocket expenses related to plaintiff's compensable injuries.
4. There is no basis for an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay to plaintiff, subject to attorney's fees approved herein, temporary total disability compensation at the rate of $264.10 per week until plaintiff returns to work or until further Order of the Industrial Commission.
2. Defendants shall continue to provide payment of expenses for medical treatment for plaintiff's compensable injuries, for so long as said treatment is designed to effect a cure, provide relief and/or lessen his period of disability. Further, defendants shall reimburse plaintiff for out of pocket expenses paid for treatment related to the compensable injury.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the sums due plaintiff in Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: Defendants shall pay directly to plaintiff's counsel every fourth check due plaintiff.
4. Defendants shall pay the costs.
This the 10th day of March, 2004.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER